# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>MUNIR AHMED MALIK | DOCKET NO.<br>17 MJ01355<br><br>MAGISTRATE'S CASE NO.<br>JUN - 1 2017 |

Complaint for violation of Title 18, United States Code, Section 1708

| NAME OF MAGISTRATE JUDGE<br>HONORABLE JACQUELINE CHOOLJIAN | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|
| DATE OF OFFENSE<br>May 31, 2017 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1029(a)(3)]

On or about May 31, 2017, in Los Angeles County, within the Central District of California, defendant MUNIR AHMED MALIK ("MALIK"), knowingly and with intent to defraud, possessed at least fifteen unauthorized or counterfeit access devices, with said possession affecting interstate and foreign commerce.

LODGED
2017 JUN -1 AM 10: 33

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>WILLIAM RICHAU<br>OFFICIAL TITLE<br>Special Agent, FBI |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)] | DATE<br>June 1, 2017 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA Robyn K. Bacon x14667     REC: Detention

## AFFIDAVIT

I, William Richau, being duly sworn, declare and state as follows:

### I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint against MUNIR AHMED MALIK ("MALIK") for a violation of Title 18, United States Code, Section 1029(a)(3): possession of fifteen or more unauthorized or counterfeit access devices.

### II. BACKGROUND OF FBI SPECIAL AGENT WILLIAM RICHAU

2.   I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been so employed for eleven years. Since April 2016, I have been assigned to the Los Angeles International Airport ("LAX") Office of the FBI, where I investigate violations of federal law which occur within the airport environment and on board aircraft.

3.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and my conversations with other law enforcement officers, agents, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. SUMMARY OF PROBABLE CAUSE

4.   On May 31, 2017, MALIK traveled from Kuala Lumpur, Malaysia to Los Angeles. During a search of MALIK's luggage at

the CBP area, 76 credit cards, all bearing MALIK's name, were found in MALIK's luggage.

5. During a subsequent <u>Mirandized</u> interview, MALIK admitted that he knew the credit cards were fraudulent. MALIK said that he had traveled to the United States in order to use the cards to purchase iPhones that he planned to transport to Malaysia. MALIK did not plan to pay off any related credit card expenses for the iPhones. MALIK also admitted that he knowingly lied to a Customs officer when questioned about his purpose for travel to the United States. MALIK admitted that he would take home approximately 30% of the profits from the plan, and said that he participated in the plan "out of greed."

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

### A. Search of MALIK's Bag at CBP Area

6. On May 31, 2017, I spoke with CBP Officer Alan Yuan. Officer Yuan relayed the following information to me:

  a. On May 31, 2017, Yuan was assigned as a CBP officer at LAX, Tom Bradley International Terminal ("TBIT"), Admissibility Review Unit ("ARU").

  b. At approximately 11:42 a.m., a CBP primary officer referred MALIK – who had just arrived in Los Angeles on a flight from Kuala Lumpur via Tokyo – to ARU for additional admissibility screening.

  c. At ARU, CBP Officer Yuan conducted MALIK's admissibility review, which began at approximately 1:51 p.m.

  d. As part of regular screening questions at the border, Officer Yuan asked MALIK the purpose of his trip to the

United States. MALIK responded that he planned to spend two weeks "on holiday," which Officer Yuan understood to mean he was on vacation. MALIK said that he had a scheduled departure from the country on or around June 15, 2017.

  e. MALIK told Officer Yuan that he planned the trip with a friend, "Mike." MALIK told Officer Yuan that he had known Mike for approximately 18 months, but did not know Mike's full name. MALIK represented that Mike did not travel with him all the way to Los Angeles because Mike had encountered visa issues at the airport in Japan.

  f. As a part of regular screening at ARU, Officer Yuan conducted a full search of MALIK's baggage. During the search, Officer Yuan discovered 60 credit cards in a pair of jeans and in MALIK's personal hygiene kit.

  g. Officer Yuan asked if the credit cards were genuine or counterfeit, and MALIK said that the cards were counterfeit. MALIK said that he planned to use the credit cards to purchase iPhones that he intended to sell for profit in Malaysia.

  h. At the conclusion of the CBP admissibility review, Officer Yuan prepared a Customs Form I-831, a Record of Sworn Statement in Administrative Proceedings to memorialize the content of the interview and search. MALIK initialed six pages of the I-831 and signed the final page, indicating that he agreed that the form accurately reflected what had occurred during the interview.

### B. MALIK's <u>Mirandized</u> Interview with FBI Special Agents

7.  On May 31, 2017, FBI SA Wess T. Brooker and I interviewed MALIK at LAX, TBIT. Before the interview, MALIK was presented with an FBI Form 395, Advice of Rights. The form was read alout to MALIK in its entirety and then presented to him to review. MALIK said that he understood the form, signed the form, and waived his rights. Among other things, MALIK said the following during his interview:

   a. MALIK had planned to travel from Kuala Lumpur, Malaysia to Las Vegas, Nevada via Tokyo, Japan and Los Angeles, California. MALIK arrived in Los Angeles on Japan Air Lines flight 62 on May 31, 2017, and was scheduled to continue to Las Vegas on American Airlines flight 1155 later that same day.

   b. MALIK had been living in Dubai, United Arab Emirates for approximately 15 months. At approximately the beginning of May 2017, MALIK traveled to Malaysia to spend time on vacation.

   c. While in Malaysia, MALIK befriended an individual, Kash LNU ("Kash"). After hearing about MALIK's recent financial troubles, Kash asked MALIK if he wanted to make some money. MALIK responded that he would be willing to make money, depending on how the money was made. Kash responded that MALIK could make money by "doing some shopping for [Kash]."

   d. Kash told MALIK that he would provide credit cards to MALIK in MALIK's name. MALIK would travel to the United States and purchase items with the credit cards. MALIK would then transport the purchases back to Malaysia to give to

4

Kash. In exchange, Kash would keep 70% of the proceeds from the sale of those items and MALIK would receive 30% of the proceeds.

  e. Kash told MALIK that MALIK should go to stores "where you don't need chips or PINs." Kash said that some cards would work to clear successful purchases, and if MALIK had any trouble purchasing an item that he should move from one card to another. If several cards did not work, MALIK was to leave and go to a different store.

  f. At Kash's direction, MALIK provided Kash with a copy of his passport in order to obtain the credit cards.

  g. In two meetings over the next week, Kash provided MALIK with two stacks of credit cards. MALIK said he knew the credit cards were fraudulently obtained at the time he received them from Kash. MALIK also understood that he was to use the fraudulent credit cards to purchase items in the United States, which he would transport back to Malaysia for Kash, rather than for his own personal use.

  h. MALIK knew that he had approximately 60 credit cards in his name. Based on the information he received from Kash, MALIK believed that he could use each credit card for $1,000 to $2,000 in purchases. MALIK agreed to make the fraudulent purchases in exchange for 30% of the profit.

  i. When asked whether he planned to pay off the funds charged to the credit cards, MALIK replied that he believed the cards were stolen numbers, so he would not be responsible for paying back the funds charged to the cards.

j. When discussing what sort of items to buy with the credit cards, Kash instructed MALIK to buy iPhones and bring the phones back to Malaysia. MALIK planned to transport the phones to Malaysia new in the boxes in his checked suitcase. At one point, Kash had suggested that MALIK buy a specific brand of luggage, but Kash ultimately decided that MALIK should only use the money for iPhone purchases.

k. As Kash and MALIK were planning MALIK's travel to the United States, one of MALIK's friends from Dubai, Hardip Sanun ("Mike"), visited MALIK in Malaysia. While Mike was visiting, MALIK introduced Mike to Kash, and all three discussed the plan to use credit cards to purchase items in the United States.

l. Kash told MALIK he would make a reservation for MALIK to fly to Las Vegas, Nevada and stay there for one week. During that time, MALIK would use the credit cards to purchase iPhones that he would take back to Malaysia.

m. On May 30, 2017, Kash ordered a taxi to pick MALIK up and transport him to the airport at Kuala Lumpur, Malaysia. At the airport, MALIK met with Mike, who had flown in from Singapore. MALIK was not sure if Mike planned to transport fraudulent credit cards in order to purchase items for Kash. Both MALIK and Mike departed Kuala Lumpur on Japan Air Lines (JL) flight 724 to Narita Airport, Tokyo, Japan.

n. At Narita Airport, Mike had trouble with his visa at the Customs checkpoint. However, MALIK continued on his next flight to Los Angeles, Japan Air Lines 62.

6

      o.    MALIK was "scared" throughout the whole flight to Los Angeles, but decided that he had already come this far in order to participate in the credit card plan. MALIK decided that he would make one trip in order to participate in the plan.

      p.    During his interview, MALIK also showed us several "WhatsApp" text messages on his phone. MALIK indicated that the messages were his instructions from Kash regarding flight numbers and hotel reservations. MALIK also interpreted multiple voice memos from Kash in Urdu in which Kash said that he was ready to give MALIK his passport and credit cards.

      q.    When asked whether MALIK had practiced purchasing an iPhone or anything else with one of the fraudulent credit cards, MALIK replied, "No."

      r.    Later during the interview, MALIK said that he had changed his mind regarding the use of the credit cards and planned to stay at the hotel in Las Vegas for a few days and return home without using the credit cards. When asked if he was concerned that Kash might be angry with him for failing to return with any iPhones, MALIK responded that he would tell Kash that none of the cards worked.

### C. Search of MALIK's Luggage

8.    On May 31, 2017, CBP conducted a search of MALIK's luggage under their border search authority. Later, the FBI conducted an inventory of the items in order to take custody of the items. These searches of MALIK's luggage revealed the following items, among others:

7

      a.    76 credit cards in the name of MUNIR MALIK from various credit card sources. Among those cards was a Barclays MasterCard with account number ending in 8710.

      b.    One receipt from True D & S (Emquartier) in Bangkok, Thailand dated 05/11/2017. The receipt details the purchase of an iPhone 7+, IMEI 355351083777480, paid for with credit card ending in 8710 in the name of MUNIR MALIK.

### V. CONCLUSION

9.    For all the reasons described above, there is probable cause to believe that MALIK committed a violation of 18 U.S.C. § 1029(a)(3).

 

*[signature]*

William Richau
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me this ___ day of June 2017.

*[signature]*

HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE